Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 7741 | DATE | 11/15/2002 |
| CASE TITLE | Second Hand Tunes vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Second Hand Tunes' Motion for a Preliminary Injunction

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ______.

(3) ☐ Answer brief to motion due______. Reply to answer brief due______.

(4) ☐ Ruling/Hearing on ______ set for ______ at ______.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(7) ☐ Trial[set for/re-set for] on ______ at ______.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ______ at ______.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Pursuant to this Court's Minute Order of November 6, 2002, denying Plaintiff's Motion for a Preliminary Injunction, the Court enters the attached Memorandum Opinion and Order explaining its findings of fact and conclusions of law.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | NOV 18 2002 date docketed | 14 |
| | Notified counsel by telephone. | docketing deputy initials | |
| X | Docketing to mail notices. | date mailed notice | |
| | Mail AO 450 form. | mailing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| klb (lc) | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 02 NOV 15 PM 4:06 Date/time received in central Clerk's Office | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SECOND HAND TUNES a/k/a 2ND HAND TUNES a/k/a SECOND CITY MUSIC,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO, a Municipal Corporation,<br><br>Defendant. | ) | No. 02 C 7741<br><br>HONORABLE DAVID H. COAR |

DOCKETED NOV 18 2002

**MEMORANDUM OPINION AND ORDER**

Before this Court is the motion of the plaintiff, Second Hand Tunes, for a preliminary injunction. A hearing was held in this matter on November 6, 2002, at which time the Court denied the motion for a preliminary injunction and reserved the right to issue a written opinion within ten days.

**Factual and Procedural Background**

Second Hand Tunes operates two retail establishments within the City of Chicago ("the City") which sell to and purchase from their customers a broad selection of new (5% of sales) and previously owned (95% of sales) music, books, and motion pictures, in various formats including pre-recorded digital audio discs ("CDs") and digital video discs ("DVDs"). Chapter 4 - 264 of the Municipal Code of the City of Chicago, also known as the Secondhand Dealers Ordinance (the "Ordinance"), regulates businesses that engage in the resale of items such as audio-video equipment, cameras, children's products, computer hardware, jewelry made of



14

precious metal, precious stone or gem, sporting or athletic gear or equipment, including a bicycle, watch, or currency. Under the Ordinance, a regulated business must obtain a Secondhand Dealers License before engaging in the business of reselling. One of the requirements for receiving the license is "whether the applicant is of good character and repute." Under the Ordinance, secondhand dealers are required to keep a record book which contains the time of the transaction, a description of every piece of secondhand property received, purchased, sold or exchanged, the date of the transaction, and the purchaser or seller. The description of each person who sells an item includes the person's name, address, birth date, social security number, weight, height and gender. In addition, every licensee must require that two forms of identification be shown to him or her by each person selling secondhand property to the licensee. If the customer does not have a photographic identification, the licensee is required to photograph the customer and record the customer's personal information on the reverse side of the photograph. The records must be open to inspection by the mayor or any member of the police force during the licensee's business hours. Further, the licensee must deliver a copy of the records for the preceding day by 12:00 noon every day. Effective June 19, 2002 the City amended the definition of audio-video equipment to include DVDs and CDs. Prior to the June 19, 2002 amendment, Second Hand Tunes was not covered by the Ordinance.

In late August, Second Hand Tunes was visited by members of the Chicago Police Department. They informed Derek Erdman, a Second Hand Tunes store manager, that Second Hand Tunes needed a Secondhand Dealer's License to continue to buy or sell previously owned CDs or DVDs due to a recent amendment of the City's Secondhand Dealers Ordinance. The police officers gave Derek Erdman a copy of the amendment and he made a photo copy and

returned the original to the officers. In mid-September, the police again visited Second Hand Tunes seeking to enforce the Ordinance. The police informed Second Hand Tunes that it was required to comply with the license application requirements for secondhand dealers. Second Hand Tunes was visited repeatedly by the police in October. On October 28, 2002, Second Hand Tunes filed a complaint in this Court seeking declaratory and injunctive relief. Second Hand Tunes sought to enjoin the defendant from enforcing the amendment because it allegedly infringes on Second Hand Tunes' constitutional rights by regulating CDs and DVDs, which are mediums of expression protected by the First Amendment. Second Hand Tunes also filed a motion for a Temporary Restraining Order ("TRO"), which this Court granted on October 30, 2002. The TRO expired on November 6, 2002, the date of the preliminary injunction hearing in this matter. At the November 6, 2002 hearing, this Court denied plaintiff's motion for a preliminary injunction and reserved the right to issue a written opinion.

**Discussion**

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (quotation omitted); see also Ind. Civil Liberties Union v. O'Bannon, 259 F.3d 766, 770 (7th Cir.2001) ("A preliminary injunction is an extraordinary remedy[.]"), reh'g en banc denied. A party seeking a preliminary injunction must demonstrate some likelihood of success on the merits, an inadequate remedy at law, and irreparable harm if the preliminary injunction is denied. See O'Bannon, 259 F.3d at 770. If the moving party demonstrates these elements, then the court must balance the harm to the nonmovant if an injunction is granted, the harm to the movant if the injunction is denied, and

the public interest. See id. Courts in the Seventh Circuit use what has been described as the sliding scale approach: "the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position." Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 895 (7th Cir. 2001).

1. Likelihood of Success on the Merits (Counts I and II)

Second Hand Tunes has declined to pursue its application for a secondhand dealer's license. Accordingly, Second Hand Tunes asserts a facial, as opposed to an as-applied challenge to the Ordinance. Second Hand Tunes argues that there is a substantial likelihood that it will prevail on its First Amendment prior restraint claims (Counts I and II of the complaint) because the licensing scheme in the defendant's Ordinance is utterly devoid of objective criteria, or any guidelines whatsoever, for public officials to follow in making the decision of whether to grant or deny a Secondhand Dealer's License. The Ordinance's licensing scheme provides, inter alia, that "the Superintendent of Police shall cause an investigation to be made to ascertain whether the applicant is of good character and repute." The Ordinance's licensing scheme does not contain any further definition of the phrase "good character and repute" to give assistance to the police officers who must interpret its meaning. Thus, Second Hand Tunes argues given the fact that the licensing scheme provides for unfettered discretion, the fact that the amendment to the Ordinance is directed narrowly and specifically at the circulation of CDs and DVDs – mediums of expression – and the fact that the Ordinance's licensing scheme requires licenses to be renewed annually, the Ordinance presents a "real and substantial threat" of censorship by government officials. See City of Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 756, 108 S.Ct. 2138, 2143 n.6 (1988).

Facial challenges to legislation are generally disfavored, but are permitted in the First Amendment context "where the licensing scheme vests unbridled discretion in the decision maker and where the regulation is challenged as overbroad." FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 223, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). Unfettered discretion per se is not the problem; rather, the concern is that such unfettered discretion may carry the risks of (a) self-censorship, and (b) censorship being disguised under the vagueness of the standard applicable to the licensing decision. See Lakewood, 486 U.S. at 759. Thus, in this context, a First Amendment facial attack requires that the licensing scheme have "a close enough nexus to expression or expressive conduct to give rise to a substantial threat of undetectable censorship." Id. In order to establish the required nexus, the challenged law must be "directed narrowly and specifically at expression or conduct commonly associated with expression," as opposed to being a "law of general applicability." Id. at 760-61. In illustrating this distinction, the Court in Lakewood noted that:

> a law requiring building permits is rarely effective as a means of censorship. To be sure, on rare occasions an opportunity for censorship will exist, such as when an unpopular newspaper seeks to build a new plant. But such laws provide *too blunt a censorship instrument* to warrant judicial intervention prior to an allegation of actual misuse. And if such charges are made, the general application of the statute to areas unrelated to expression will provide the courts a yardstick with which to measure the licensor's occasional speech-related decision.

Id. at 761 (emphasis added).

The Seventh Circuit further elaborated on Lakewood's expression-directed versus generally-applicable distinction in Graff v. City of Chicago, 9 F.3d 1309 (7th Cir. 1993) (en banc), cert denied, 511 U.S. 1085 (1994). In Graff, the plaintiff sought to bring a facial challenge to municipal laws requiring a permit for building structures on the public way and asserted an

entitlement to the same protection for newsstands that was afforded newsracks in Lakewood. The Seventh Circuit distinguished Lakewood, finding that the same threat of prior restraint that exists for newsracks does not exist for newsstands because newsstands are not tied to a particular publication. Graff, 9 F.3d at 1316. In such a situation, it would be highly unlikely that a Chicago official could "target a certain publication by targeting a certain newsstand." Id. A facial challenge is permissible "[o]nly when the ordinance at issue presents an *obvious and immediate threat* of censorship." Id. at 1317 (emphasis added).

In this case, the Ordinance applicable to secondhand dealers is akin to the structure permit provision in Graff in that it is a generally applicable regulation that happens, in some instances, to regulate businesses that deal in First Amendment-protected materials. Further, the Second Hand Tunes stores, like the newsstand in Graff, deal in a plethora of publications. As such, they are not designated outlets for a single recording artist or cinema director. At the preliminary injunction hearing, plaintiff asserted that there was a risk of self-censorship in the types of music that it sells because it is required under the Ordinance to provide a complete list of the items bought and sold on a daily basis. Thus, it might engage in self-censorship by refusing to sell sexually explicit material or rap music about cop killing for fear that its owners will be found to lack "good character and repute" by the same officers that are inspecting the contents of the list. The purpose of the record keeping requirement, however, is to enable the police to detect or investigate crime. The threat of censorship by such a practice "derives from the unlikeliest of scenarios" and is "too remote and speculative" to allow a facial challenge. Graff, 9 F.3d 1317.

Moreover, in the unlikely event that such censorship occurred, it could be challenged on an as-applied basis using as a "yardstick" the pattern of application of the "good character and

repute" criterion in non-expression license investigations. See Lakewood, 486 U.S. at 761; see also Thomas v. Chicago Park District, 534 U.S. 316, 324-35 (2002) (finding that abuse of park permit waiver system must be dealt with "if and when a pattern of unlawful favoritism appears"); Broadrick, 413 U.S. at 615-16 ("whatever overbreadth may exist should be cured through a case-by case analysis of the fact situations to which its sanctions assertedly may not be applied"); MacDonald v. City of Chicago, 243 F.3d 1021, 1033 (7th Cir. 2001) (rejecting prior restraint approach to parade ordinance in part based on fact that licensing official "does not know the content of the speech because the permit application does not ask for any information about the purpose of the parade or the motive of the participant," further noting that "[i]f the Commissioner or the police impose rules or restrictions beyond those specifically set forth in the ordinance, an as-applied challenge may be in order"), cert. denied, 534 U.S. 1113 (2002).

Plaintiff next argues that by amending the Ordinance to include CDs and DVDs, the City was directly targeting expression. The Ordinance, however, seeks to regulate the resale of items that are relatively valuable and easily stolen. The Ordinance, as amended, includes expressive materials (CDs and DVDs) among a broader category of items ("audio-video equipment"), which is in turn one of several categories of relatively valuable and easily stolen items included within the overarching category of "secondhand property" which is the predicate for licensure under chapter 2-264. The Court would be taking too narrow a view of the licensing scheme if it focused solely on the amendment to the Ordinance. The licensing requirement for secondhand dealers of CDs and DVDs is merely a subset of the City's broader requirement of licensure for all secondhand dealers. Accordingly, the law is not "'narrowly and specifically' directed at expression." Weinberg v. City of Chicago, 179 F.Supp.2d 869, 885 (N.D. Ill. 2002).

Even if the plaintiff could show the required nexus to raise a facial challenge, a preliminary injunction would be improper because it is unlikely that plaintiff would succeed on its claim. In evaluating a facial challenge to a state law, a federal court must consider any limiting construction that a state court or enforcement agency has proffered. See, e.g., Ward v. Rock Against Racism, 491 U.S. 781, 795-96 (1989); Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494 n.5 (1982); Kolender v. Lawson, 461 U.S. 352, 355 (1981); Grayned v. City of Rockford, 408 U.S. 104, 110 (1972). The Chicago Police Department limits its application of the "good character and repute" phrase in section 4-262-020 to checks into prior felony convictions on the part of owners and corporate officers of the license applicant. See Declaration of Commander Debra Kirby ("Kirby Decl."); Declaration of Deputy Commissioner Mary Lou Eisenhauer ("Eisenhauer Decl."). The application for a secondhand dealers license also notes: "Please be aware that individuals who have a felony conviction may not be eligible for a 1683 Second Hand Dealers business license." This inquiry is justified by its close connection with criminal behavior and is not content based. See Thomas, 534 U.S. at 322-23 ("[a] licensing standard which gives an official authority to censor the content of speech differs *toto coelo* from one limited by its terms, or by nondiscriminatory practice, to considerations of public safety and the like") (quoting Niemotko v. Maryland, 340 U.S. 268, 282 (Frankfurter, J., concurring)). The standard is purely objective and diminishes the possibility of vague standards masking censorship. Thus, plaintiff is not likely to prevail on the merits.

As plaintiff has failed to demonstrate a likelihood of success on the merits, the Court need not determine whether there is an inadequate remedy at law or irreparable harm if the preliminary injunction is denied.

2. Likelihood of Success on the Merits (Counts III and IV)

Second Hand Tunes argues that there is a substantial likelihood that it will prevail on its First Amendment content-based claims (Count III and IV) because the amendment specifically and narrowly seeks to regulate and restrict the circulation of previously owned CDs and DVDs, all of which contain expression, communication, and/or speech protected by the First Amendment. See Ward, 491 U.S. at 790 ("[m]usic, as a form of expression and communication, is protected under the First Amendment"); Schad v. Borough of Mount Ephraim, 452 U.S. 61, 65, 101 S.Ct. 2176, 2181 (1981) ("motion pictures ... and live entertainment, such as musical and dramatic works fall within the First Amendment guarantee").

A law is content-based if it regulates speech based on the ideas or messages it expresses. DiMa Corporation v. Town of Hallie, 185 F.3d 823, 827 (7th Cir. 1999). Plaintiff argues that the amendment to the Ordinance is content-based because it includes some formats of music or visual reproduction (CDs and DVDs), but not others (tapes and vinyl records). Plaintiff asserts that because CDs and DVDs often contain additional tracks or footage absent from the tape or LP version, this is a content-based distinction. This argument, however, is illogical and unsupported. The fact that CDs and DVDs often contain additional material is due to technology (laser-read discs can contain more bits or bytes of data than magnetic or stylus-read ones) and marketing (inclusion of additional material is a way of persuading consumers to buy the new format, even if they already own the related LP or tape). It is because of this new and popular technology that DVDs and CDs are more readily resold and included in the Ordinance. As set forth in the Declaration of Commander Frank Kehoe ("Kehoe Decl.") at ¶ 5, CDs and DVDs increasingly are a target for thefts from homes and automobiles. The Ordinance's inclusion of

CDs and DVDs and not other formats is justified by their prevalence among stolen items. Accordingly, a preliminary injunction is not warranted because there is not a likelihood of success on the merits of plaintiff's content-based claim.

As plaintiff has failed to demonstrate a likelihood of success on the merits, the Court need not determine whether there is an inadequate remedy at law or irreparable harm if the preliminary injunction is denied.

3. Likelihood of Success on the Merits (Counts V and VI)

Second Hand Tunes argues that there is a substantial likelihood that it will prevail on its First Amendment time, place, and manner claims (Counts V and VI). Second Hand Tunes argues that the record keeping requirements are unreasonable time, place, and manner restrictions because they require the secondhand dealer to require photographic identification of all purchasers and sellers. In addition, the Ordinance requires the secondhand dealer to keep the CDs and DVDs at the licensed place of business for inspection for ten calendar days and prevents the resale of any CDs or DVDs until thirty days following their receipt.

The government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information. See Ward, 491 U.S. at 791. The ordinance is justified without reference to content because the inclusion of CDs and DVDs is based on their prevalence among stolen items. See Kehoe Decl. at ¶ 5. The government interest at issue is crime prevention and control. These are, in general, important and indeed primary governmental functions. See, e.g., U.S. v. Weston, 255 F.3d 873,

880-81 (D.C. Cir. 2001), cert. denied, 122 S.Ct. 670 (2001), and cases cited therein. The categories of used merchandise included within the definition of "secondhand property" are items that are valuable and easily and frequently stolen. See Kehoe Decl. at ¶¶ 5-7. Thus, the challenged regulation relates directly to a compelling government interest in fighting crime.

Narrow tailoring in the present context requires that the ordinance "promote[] a substantial government interest that would be achieved less effectively absent the regulation." Ward, 491 U.S. at 799. The Ordinance is narrowly tailored in that it merely provides for basic licensure of establishments that sell such merchandise, and provides for record keeping sufficient to identify (a) items that are sold to the store for resale, and (b) the person selling the goods. Such information allows for discerning patterns of frequent sales which might be indicative of criminal activity, as well as providing a chance of locating stolen merchandise. See Kehoe Decl. at ¶¶ 5-8. It is precisely because CDs and DVDs do not have serial numbers that keeping a record of the titles, date of sale, seller, and other related information is necessary to provide circumstantial evidence of crime in some situations. If the titles were not recorded and if the seller was not disclosed in a way permitting the two to be linked, the Ordinance's purpose would not be served as effectively, if at all.

Moreover, the Ordinance leaves open ample channels of communication. To begin with, it does not bar the sale of used CDs or DVDS, it simply requires licensure of sellers and record-keeping with respect to merchandise and transactions. Even if the Ordinance did limit or prohibit the sale of used CDs or DVDs, there would be ample alternative channels. The Ordinance does not touch on the sale of new merchandise by retail stores or independent retail outlets. Nor does it touch on the sale of music and video in other formats, such as LPs or magnetic tapes. The

same type of expressive information is available on disc – both new and used – from other sources such as Internet sales on amazon.com, or by download from the internet. See generally Weinberg, 179 F.Supp.2d at 879 (alternative channels included bookstore and Internet sales, leaflets, and advertising). Thus, a preliminary injunction is improper because plaintiff cannot demonstrate a likelihood of success on the merits of its time, place, and manner restriction claim.

As plaintiff has failed to demonstrate a likelihood of success on the merits, the Court need not determine whether there is an inadequate remedy at law or irreparable harm if the preliminary injunction is denied.

4. Likelihood of Success on Merits (Counts VII and VIII)

Plaintiff argues that there is a likelihood of success on the merits of its unreasonable search and seizure claims (Counts VII and VIII) because the Ordinance does not require either the procurement of a warrant or the issuing of a subpoena prior to requiring plaintiff to submit to inspections of its records by law enforcement or city officials. While the Supreme Court has long recognized that the Fourth Amendment's prohibition on unreasonable searches and seizures applies to commercial premises, it has also recognized that an expectation of privacy in commercial premises is different and less than a similar expectation in an individual's home. New York v. Burger, 482 U.S. 691, 699, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987).

This expectation of privacy is particularly attenuated for "closely regulated" enterprises. Id. Because the owner of a commercial enterprise in a "closely regulated" industry has a reduced expectation of privacy, a warrantless inspection of the premises will be reasonable within the meaning of the Fourth Amendment so long as three criteria are met. Id. at 702. First, there must be a substantial government interest that informs the regulatory scheme pursuant to which the

inspection is made. Id. Second, the warrantless inspections must be necessary to further the regulatory scheme. Id. Third, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers. Id. at 703.

A closely regulated business is one in which the regulation "is sufficiently pervasive and defined that the owner of such a facility cannot help but be aware that he will be subject to effective inspection." Donovan v. Dewey, 452 U.S. 594, 603, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981) (quoting United States v. Biswell, 406 U.S. 311, 316 (1972)). Courts look to the nature of the regulatory statute itself, and where the provisions regulating the activity of the business are extensive, find that the business is "closely regulated." Burger, 482 U.S. at 703-04. In Burger, the Supreme Court found the vehicle dismantling business to be "closely regulated" in part because the regulatory statute required the acquisition of a license, the payment of a registration fee, the maintenance of records made available for inspection by the police, and subjected those failing to comply to criminal penalties or civil fines. Id. The Ordinance at issue here also requires the acquisition of a license and payment of a fee, the maintenance of records made available for inspection by the police, and subjects those failing to comply to civil fines. The regulatory statute at issue is sufficiently pervasive and defined so as to put dealers of secondhand goods on notice that they will be subject to inspection. In addition, secondhand dealers in general have a lengthy history of government oversight. See, e.g., Burger, 482 U.S. at 706; Peterman v. Coleman, 764 F.2d 1416, 1421 (11th Cir. 1985) (secondhand dealers closely regulated). Accordingly, Second Hand Tunes is a closely regulated business.

The City has a substantial interest in regulating secondhand dealers. The purpose of the Ordinance is to reduce and deter crime by requiring secondhand dealers of items which are frequently stolen (such as CDs and DVDs, audio-video equipment, cameras, jewelry, etc) to keep records which permit the identification of persons who sell merchandise to secondhand stores which in turn allows the police to identify persons who have suspicious patterns of regular large volume sales, and improves the chances of locating stolen property. In Burger, the Supreme Court held that eradicating theft is a substantial interest, and noted that the "theft problem can be addressed effectively by controlling the receiver of, or market in, stolen property." 482 U.S. at 708. Thus, the City's interest in deterring crime is a substantial interest.

The warrantless inspections authorized by the Ordinance are necessary to further the City's substantial interest in deterring and detecting crime. As the Supreme Court recognized in Burger, "'if inspection is to be effective and serve as a credible deterrent, unannounced, even frequent inspections are essential. 482 U.S. at 710. In this context, the prerequisite of a warrant could easily frustrate inspection ..." Id. (quoting Biswell, 406 U.S. at 316). Here, too, a warrant requirement might well frustrate the Ordinance's purpose since CDs and DVDs move in and out of stores even more quickly than the stolen cars at issue in Burger. Thus, "preserving the element of surprise and possibility of frequent inspections is necessary in order to detect violators." Lesser v. Espy, 34 F.3d 1301, 1308 (7th Cir. 1994). Moreover, requiring the police to seek a warrant each and every time they wish to conduct inspections pursuant to the Ordinance would radically increase the cost and difficulty of carrying out such inspections, thereby frustrating the regulatory scheme. See Contreras v. City of Chicago, 119 F.3d 1286, 1290 (7th Cir. 1997) (health inspections); Lesser, 34 F.3d at 1308 (treatment of animals).

Finally, the Ordinance provides a constitutionally adequate substitute for a warrant. When applicable law puts those in a regulated business on notice that they are subject to frequent warrantless inspection, there is no need for the additional safeguard of an administrative warrant. See Burger, 482 U.S. at 711; Lesser, 34 F.3d at 1308. Here, the Ordinance alerts secondhand dealers that their records and inventory will be subject to inspection, and sets forth the scope of those inspections by specifying that the mayor, police, or any investigator for the department of revenue or the department of consumer services may inspect the specific records required to be kept by the Ordinance. See Sections 4-264-050(f); 4-264-070. Thus, the secondhand dealer "knows that inspections to which he is subject do not constitute discretionary acts by a government official but are conducted pursuant to a statute." Burger, 482 U.S. at 711. Moreover, the fact the Ordinance permits warrantless inspections of both records and inventory does not make the Ordinance unconstitutional because the Ordinance gives the secondhand dealer notice of "the purposes of the inspector and the limits of his task." Burger, 482 U.S. at 712 (quoting Biswell, 406 U.S. at 316) (finding statute which authorizes inspection of records and inventory to be constitutional). The Ordinance also gives notice of who is authorized to conduct such inspections. See Section 4-264-050(f). Finally, the Ordinance only requires that records be made available for inspection during the licensee's business hours. Id. See Burger, 482 U.S. at 711 (inspections conducted during normal business hours were reasonable).

Thus, because Second Hand Tunes is a closely regulated enterprise and the Ordinance meets the requirements of reasonableness, Second Hand Tunes cannot demonstrate a likelihood of success on the merits. As plaintiff has failed to demonstrate a likelihood of success on the merits, the Court need not determine whether there is an inadequate remedy at law or irreparable

harm if the preliminary injunction is denied. Accordingly, a preliminary injunction on the basis of plaintiff's fourth amendment claims is unwarranted.

**Conclusion**

For the foregoing reasons, plaintiff's motion for a preliminary injunction is DENIED.

Enter:

David H. Coar
United States District Judge

Dated: November 15, 2002